UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20336-CIV-MARRA

BISCAYNE PARK, LLC, a
Florida limited liability company,

     Plaintiff,

v.

MADISON REALTY CAPITAL, L.P., a
Delaware limited liability company,

     Defendant.

_____/

**OMNIBUS OPINION AND ORDER**

     This cause is before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint

(DE 7) and Plaintiff's Motion for Remand of Removed Action (DE 8). The Court has reviewed the

briefs and is otherwise advised in the premises.

**I. Background**[1]

     On November 9, 2006, Biscayne Park, L.L.C. ("Biscayne") entered into a mortgage note with

Madison Realty Capital, L.P. ("Madison Realty") under which Madison Realty loaned Biscayne

$8,150,000.00 to secure the purchase of certain property (the "Biscayne property"). The note was

secured by a mortgage on the property as well as other collateral. Biscayne defaulted on the loan in

May of 2009, and in July of 2009 Madison Realty initiated foreclosure proceedings against Biscayne

in state court. (DE 1, Attach. 1 ¶ 3) ("Complaint"). Biscayne filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code during the pendency of that case. (Complaint ¶ 4).

---

[1] Unless otherwise noted, the underlying facts are derived from this Court's decision in *In re Biscayne Park, LLC*, No. 12-20150-CIV-MARRA, 2012 WL 4468346 (S.D. Fla. Sept. 26, 2012).

On August 16, 2010, in a related bankruptcy proceeding, the bankruptcy court entered an order authorizing Biscayne to use cash collateral and grant certain liens and adequate protections to Madison Realty, the holder of the 2006 promissory note.[2] Among other things, the order granted Madison Realty a first priority lien on "all of the real and personal property of [Biscayne] of any description whatsoever, wherever located and whenever arising or acquired . . ."

On December 1, 2010, the bankruptcy court held a hearing to consider the sale of "substantially all of the assets of [Biscayne]." At the hearing, Madison Realty bid $1 million to acquire all of its collateral as described in the August 16, 2010 bankruptcy court order. On December 30, 2010, the bankruptcy court declared Madison Realty's bid to be the highest and best bid and entered an order authorizing the sale of assets and conveying assets (including the Biscayne property) free and clear of liens, claims, encumbrances and interests. (Complaint ¶ 5). Under that order, Madison Realty acquired, among other items, the following assets:

- All award and payments which may heretofore and hereafter be made with respect to the property in question and any improvements or equipment related thereto.

- All causes of actions and judgments pursuant thereto relating to the [property in question], and all judgments awards of damages and settlements hereafter made resulting from . . . improvements thereon or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets.

- All contract rights, causes of actions, claims, demands of [Biscayne].

- [T]he right, in the name and on behalf of [Biscayne], to appear in and defend any action or proceeding brought with respect to the [property in question and its improvements and to commence any action or proceeding to protect interests in the [property in question and its improvements].

---

[2] This related bankruptcy proceeding culminated in an order of dismissal that Biscayne appealed and this Court affirmed. *See In re Biscayne Park, LLC*, 2012 WL 4468346. That appeal is discussed below only to the extent that it is relevant to the motions presently before the Court.

Madison Realty designated its subsidiary, Biscayne Park Acquisition Group, LLC ("Biscayne Acquisition Group"), as the title holder to the Biscayne property as well as certain cash accounts and causes of action. (United States Bankruptcy Court, Southern District of Florida; Case No. 10-20941-AJC, DE 10 at 4 ¶ H).

Once Madison Realty acquired the property, it moved for summary judgment to foreclose on the mortgage and to determine the value of the property to fix the amount of any deficiency. (DE 8, Attachs. 2–3). Both motions were filed in the initial state court foreclosure proceeding. The state court entered an order concluding that, contrary to Madison Realty's belief, the value of the property *exceeded* Madison Realty's debt claims. (DE 8, Attach. 4).[3]

Based on this "excess value" order, Biscayne sought a way to recover funds unnecessarily transferred to Madison Realty. Biscayne was foreclosed from initiating a counterclaim in the state court foreclosure action, however, based on the terms of the 2006 promissory note. Section 32 of the Mortgage and Security Agreement, entitled "Waiver of Counterclaim," provided,

> Mortgagor hereby waives the right to assert a counterclaim in any action or proceeding brought against it by Mortgagee, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Mortgagee against Mortgagor, or in any matters whatsoever arising out of or in any way connected with this Mortgage, the Note, any of the Other Security Documents or the Debt.

(DE 8, Attach. 1 at 20). Biscayne consequently instituted a separate action in state court alleging that "even though the debt by Biscayne Park to Madison was completely extinguished, Madison took (a) causes of action belonging to Biscayne Park; [and] (b) cash/accounts of over $500,000.00. (DE 1, Attach. 1 ¶ 7). Biscayne seeks "a declaration that the causes of action be returned to Biscayne" and

---

[3] The state court determined that the fair market value of the Biscayne property was $15,500,000.00. (DE 8, Attach. 4 ¶ 7).

that "the cash/accounts be returned." (DE 1, Attach. 1 at 5). Madison Realty removed the action to this Court based on diversity of citizenship. (DE 1).

## II. Biscayne's Motion for Remand

Biscayne now moves to remand this action to state court. "The rule of construing removal statutes strictly and resolving doubts in favor of remand is well-established." *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328–29 (11th Cir.2006) (citing *Syngenta Crop Prot. Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); and *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)). "[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411(11th Cir. 1999). "A removing defendant," in this case Madison Realty, "bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir.2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319–20 (11th Cir.2001)).

Biscayne does not dispute that the parties are diverse or that the amount in controversy is above the jurisdictional threshold. Rather, according to Biscayne, this case is simply a continuation of Madison Realty's initial state court foreclosure action. Biscayne alleges that Madison Realty is impermissibly forum shopping and that a remand is appropriate because "Madison Realty voluntarily proceeded in State Court and after a stint in Federal Bankruptcy Court, voluntarily returned to State Court to effectuate its' [sic] remedies. [The newly removed action] is but a continuation of the State Court litigation with a new case number as any counterclaim for affirmative relief were required by the loan documents to be brought in a separate action." (DE 8 ¶¶ 3–4). Biscayne further alleges that "Madison [Realty] is, in essence, the plaintiff" and that "[t]he Court is not bound by the technical forms of the State Court action and can rearrange the parties according to their underlying true

4

interests in the controversy." (DE 8 ¶ 8).

The Court rejects Biscayne's position. The removal statute, 28 U.S.C. § 1441(a), provides that,

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"The Supreme Court has held that district courts lack authority 'to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute.'" *Lloyd v. Benton*, 686 F.3d 1225, 1227–28 (11th Cir. 2012) (quoting *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976), abrogated on other grounds by *Quackenbush v. Allstate Ins. Co.*, 517 U.S 706, 714–15 (1996)). And the Eleventh Circuit has held that "a district court exceeds its authority when it remands a federal claim 'on grounds not provided for in the controlling [removal] statute.'" *Id.* at 1228 (quoting *In re City of Mobile*, 75 F.3d 605, 607 (11th Cir.1996)).

Here, as Biscayne admits in its motion for remand, "Removal was facially proper." (DE 8 ¶ 2). The Court has diversity jurisdiction over this action, and Biscayne has provided no authority for the proposition that the Court may remand an action properly in front of it simply because the case feels like the extension of a previous proceeding. Because the district court has original jurisdiction in this case under the diversity of citizenship statute, 28 U.S.C. § 1332, the Court "retain[s] jurisdiction over the properly removed federal claim." *In re City of Mobile*, 75 F.3d at 608. All that remains is to determine whether Biscayne's complaint survives Madison Realty's motion to dismiss.

5

### III. Madison Realty's Motion to Dismiss

Madison Realty moves to dismiss Biscayne's complaint because (1) Biscayne lacks standing to bring this action; (2) Biscayne's claims are barred by both claim and issue preclusion; (3) Biscayne's claims were compulsory counterclaims in the state court foreclosure action and cannot be brought in a subsequently filed action; (4) Biscayne's complaint fails to state a claim upon which relief can be granted; and (5) Biscayne has failed to join an indispensable party. The Court addresses each argument in turn.

### A. Standing

Madison Realty claims that Biscayne lacks standing to bring this action because it relates to Biscayne's property, and Madison Realty acquired "[a]ll causes of action . . . relating to the [property]" through the December 30, 2010 bankruptcy court order. As Biscayne correctly points out in response, "Madison's argument is essentially that by virtue of the judicial sale it acquired the rights to sue itself for taking too much property and collateral at the judicial sale." The Court has little trouble rejecting this argument.

Any cause of action Biscayne may have for the return of excess collateral did not accrue until the state court valued the bankruptcy estate upon Madison Realty's motion, and this valuation did not occur until after the December 30, 2010 bankruptcy court order that authorized the transfer of Biscayne's assets to Madison Realty. Biscayne does not lack standing to bring a claim arising from the valuation simply because Madison Realty acquired "[a]ll causes of action . . . relating to the [property]" through a previously entered order. Biscayne's claim does not "relate to the property" in that sense: it is a separate and distinct claim that arose from the transfer of Biscayne's assets to Madison Realty; not the underlying loan and foreclosure proceedings between them.

6

### B. *Res Judicata* (claim preclusion) & Collateral Estoppel (issue preclusion)[4]

Madison Realty argues that Biscayne's claim is barred by both claim preclusion and issue preclusion.

As to claim preclusion, the Eleventh Circuit has held that,

> [a]s a general rule, res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding. A party asserting res judicata bears the burden of showing these elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. Only if all four of those requirements are met do we consider whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies.

*Dormescar v. U.S. Atty. Gen.*, 690 F.3d 1258, 1268 (11th Cir. 2012) (citations, quotations, and notes omitted). Madison Realty points to a trio of "prior decisions" rendered by the state court, the bankruptcy court, and this Court as meeting the first, second, and third elements. And Madison Realty argues that the fourth element is met because this case arises out of the debt ("specifically, the Loan Documents") that was the subject of the state court foreclosure action and Biscayne's bankruptcy proceedings. In other words, according to Madison Realty, Biscayne should be foreclosed from raising a claim for return of excess collateral because the issue of whether Madison Realty wrongfully took causes of action and cash accounts has already been litigated. The Court rejects Madison Realty's argument because the issue of whether Madison Realty wrongfully took causes of action and cash accounts deals largely with the loan agreement between the parties and whether Biscayne defaulted on that loan. Biscayne's claim deals solely with whether Biscayne is entitled to seek excess collateral under the valuation order.

---

[4] The Eleventh Circuit identifies *res judicata* and collateral estoppel as synonymous with claim preclusion and issue preclusion, respectively. *See Dormescar v. U.S. Atty. Gen.*, 690 F.3d 1258, 1268 n.9 (11th Cir. 2012).

The Court rejects Madison Realty's collateral estoppel argument on similar grounds. "Federal collateral estoppel law applies when, *inter alia*, the issue at stake is identical to the one involved in the prior proceeding and the issue was actually litigated and decided in the prior proceeding." *Lozman v. City of Riviera Beach*, __ F.3d __, No. 11-15448, 2013 WL 1285868, at *11 (11th Cir. Apr. 1, 2013). Moreover, "the issue must have been 'actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Id.* (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). The issue of whether Biscayne is entitled to seek the return of excess collateral has never been raised in a prior proceeding because that cause of action did not accrue until the state court's valuation order and, as set forth above, that issue is separate from the issue of whether Madison Realty wrongfully took causes of action and cash accounts. Thus, Biscayne has not had a full and fair opportunity to litigate that issue in an earlier case and is consequently not precluded from raising it in this action.

### C. Compulsory Counterclaim

Madison Realty argues that Biscayne waived its rights to seek the return of excess collateral because the claim was a compulsory counterclaim and Biscayne did not file it as such in the state court foreclosure action. (Madison Realty finds insignificant the fact that Biscayne was foreclosed from raising the claim as a counterclaim under the terms of the 2006 promissory note). "State law governs whether the failure to bring a compulsory counterclaim in a prior state court proceeding bars a subsequent federal diversity action on that claim." *Hobirn, Inc. v. Aerotek, Inc.*, 787 F. Supp. 2d 1298, 1302 (2011) (citing *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380 (11th Cir. 1991)).

Florida Rule of Civil Procedure 1.170(a) ("Compulsory Counterclaims") provides, in

8

pertinent part,

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

In other words, "a compulsory counterclaim is a defendant's cause of action 'arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim.'" *Montgomery Ward Dev. Corp.*, 932 F.2d at 1381 (quoting *Yost v. Am. Nat'l Bank*, 570 So. 2d 350, 352 (Fla. Dist. Ct. App. 1990)). Florida has adopted a four-part "transaction or occurrence" test to determine whether a claim is compulsory: (1) are the issues of fact and law raised by the claim and counterclaim largely the same? (2) would *res judicata* bar the subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? (4) is there any logical relation between the claim and the counterclaim? *See Mascotte v. Fla. Municipal Liability Self Insurers Program*, 444 So. 2d 965, 966 (Fla. Dist. Ct. App. 1983). As the Eleventh Circuit has instructed, "[a]n affirmative answer to any of the foregoing questions would mean that the counterclaim is compulsory." *Montgomery*, 932 F.2d at 1381 (citation omitted).

As a matter of law, the Court concludes that the relationship between Madison Realty's state court foreclosure claim and Biscayne's "counterclaim" for excess collateral does not satisfy any of these tests. The factual and legal issues raised by the two claims are not "largely the same" because Biscayne's counterclaim arose from a state court valuation of property separate and distinct from Madison Realty's claim for foreclosure. In Madison Realty's foreclosure claim, for example, the relevant facts and legal issues are comprised largely of the nature of the loan agreement between the

parties and whether Biscayne defaulted on that loan. In contrast, Biscayne's counterclaim has little

do with the loan and default; rather, the relevant facts involve the transfer of Biscayne's assets to

Madison Realty once the facts and legal issues of Madison Realty's foreclosure action were already

resolved, and the sole legal issue is whether Biscayne is entitled to seek excess collateral under the

state court's valuation order.

The Court has already established that r*es judicata* and collateral estoppel do not bar

Biscayne's claim, *see supra* Part III.B., and "substantially the same evidence" does *not* support or

refute both claims because the claims involve different factual and legal issues. Thus, only the

question of a "logical relation" remains.

Florida has accepted the same definition of "logical relationship" as the Eleventh Circuit.

A claim has a logical relationship to the original claim if it arises out of the same
aggregate of operative facts as the original claim in two senses: (1) that the same
aggregate of operative facts serves as the basis of both claims; or (2) that the
aggregate core of facts upon which the original claim rests activates additional legal
rights in a party defendant that would otherwise remain dormant.

*Id.* The claims do not have a logical relationship because they do not arise out of the same "aggregate

of operative facts" in either "sense." Even broadly construing the aggregate operative facts that can

act as a common basis for both claims, the Court concludes that the facts relevant to Madison

Realty's foreclosure action neither serve as the basis of Biscayne's excess collateral claim nor do

they activate legal rights "that would otherwise remain dormant."[5]

---

[5] Moreover, while Florida law dictates that failing to raise a compulsory counterclaim in the original suit results in waiver of the claim, *see Biondo v. Powers*, 805 So. 2d 67, 69 (Fla. Dist. Ct. App. 2002), "[a] claim cannot be compulsory if it did not exist at the time the answer was due. A counterclaim that has not yet accrued is not mature, and cannot be a compulsory counterclaim within the meaning of Rule 1.170." *Hobirn*, 787 F. Supp. 2d at 1303. Biscayne's claim for return of excess collateral could not have existed at the time Biscayne's answer to Madison Realty's foreclosure action was due because the claim did not accrue until the state court valued the property in November 9, 2011 (over two years after Madison Realty initiated the foreclosure proceedings).

### D. Failure to State a Claim

Madison Realty moves to dismiss Biscayne's complaint under Federal Rule of Civil Procedure 12(b)(6) because Biscayne's complaint does not put Madison Realty on notice of the claims. Specifically, Madison Realty argues that Biscayne's requested relief of returned "causes of action and cash/accounts" are vague and conclusory and insufficient to state a claim.

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Madison Realty's argument is well taken. The Court concludes that Biscayne's vague

references to "cash accounts" and "causes of action" do not put Madison Realty on notice of the nature of Biscayne's claim, particularly when the extent of the claim is for the return of excess collateral. Thus, Madison Realty's motion to dismiss will be granted to the extent that it seeks a more factually developed claim from Biscayne. Biscayne shall have leave to amend the complaint to more fully factually develop its claim by specifying which causes of action and cash/accounts it seeks returned. The Court notes that, to the extent Biscayne seeks the return of a cause of action the ownership of which has already been established, *see In re Biscayne Park, LLC*, No. 12-20150-CIV-MARRA, 2012 WL 4468346 (S.D. Fla. Sept. 26, 2012), Biscayne does not have leave to amend to add a claim for such a cause of action.

**E. Indispensable Party**

Madison Realty's final ground for dismissal is based on Federal Rule of Civil Procedure 19, which provides, in pertinent part:

(a) Persons Required to Be Joined if Feasible

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The Eleventh Circuit has interpreted Rule 19 as setting forth a two-part test for determining whether a party is indispensable:

First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue. In making the first determination—i.e., whether the party in question "should be joined," pragmatic concerns, especially the effect on the parties and the litigation, control.

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279–80 (11th Cir. 2003)

(quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir.

13

1982)) (citations and quotations omitted).

Here, Madison Realty argues that because it designated Biscayne Acquisition Group—a separate and distinct legal entity—as the title holder to the Biscayne property and certain cash accounts and causes of action, Biscayne Acquisition Group has an interest in the assets that is not represented in this action. In other words, Madison Realty's position is that Biscayne Acquisition Group is an indispensable party. But Madison Realty's argument does not address the second part of the test—namely, whether Biscayne Acquisition Group cannot be joined and, if so, whether the litigation should continue.

The Court thus concludes that Biscayne Acquisition Group should be joined as a party because, as a Delaware corporation, its joinder would not appear to deprive the Court of subject matter jurisdiction,[6] and in its absence the Court cannot accord complete relief among the existing parties because it holds the assets that Biscayne seeks in a corporate form independent of Madison Realty. *See* Fed. R. Civ. P. 19(a)(1)(A). Because Madison Realty has identified no reason why Biscayne Acquisition Group cannot be joined, however, the standard for dismissal under Rule 19(b) is not met. *See Focus on the Family*, 344 F.3d at 1280 (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000) (recognizing that dismissal for failure to join an indispensable party is appropriate only where the entity in question cannot be made a party)). Thus, the Court need not decide whether this litigation should continue without Biscayne Acquisition Group. Biscayne shall have leave to amend to add Biscayne Acquisition Group as a party to this action.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to

---

[6] Biscayne is a Florida limited liability company, and Madison Realty is a Delaware limited liability company.

Dismiss Plaintiff's Complaint (DE 7) is **GRANTED in part and DENIED in part.** Biscayne has leave to amend its complaint to specify which causes of action and cash accounts it seeks returned, and to add Biscayne Acquisition Group as a party to this action. The amended complaint shall be filed within ten (10) days of the date of entry of this order. Plaintiff's Motion for Remand of Removed Action (DE 8) is **DENIED.**

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of May, 2013.

                                        _____

                                        KENNETH A. MARRA
                                        United States District Judge